UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

IN RE:                              §
                                    §
SANBURG FINANCIAL CORP,             §
                                    §
                                    §   CIVIL ACTION NO. C-10-280
                                    §

## ORDER

On this day came on to be considered Appellant Sandburg Financial Corporation's appeal from a final order of the United States Bankruptcy Court for the Southern District of Texas.   (Case No. 2:10-cv-280; Bankr. Adv. Proc. 09-2046). Specifically, Appellant challenges the Bankruptcy Court's findings as to (1) the enforceability of certain post-bankruptcy confirmation agreements between the parties, and (2) the imposition of sanctions.  (D.E. 2-41; D.E. 2-52; D.E. 2-53.)  For the reasons stated herein, the Bankruptcy Court's judgment is AFFIRMED.

### I.      Jurisdiction

The Court has jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1), which states that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges . . . ."  A "final" order in a bankruptcy case is any order that "ends a discrete judicial unit in the larger case." Smith v. Revie, 817 F.2d 365, 367-68 (5th Cir. 1987).

### II.     Standard of Review

On appeal, a bankruptcy court's "conclusions of law and mixed law and fact questions are reviewed de novo, while findings of fact are reviewed for clear error."  In re

McCain, 516 F.3d 301, 307 (5th Cir. 2008); In re Stonebridge Technologies, Inc., 430 F.3d 260, 265 (5th Cir. 2005).   Further, Federal Rule of Bankruptcy Procedure 8013 provides, "[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."   Fed. R. Bankr. P. 8013.

III.    **Factual and Procedural Background**

    A.    **Agreements**

The following facts are not in dispute.  Appellant Sandburg Financial Corporation ("Sandburg") seeks to collect approximately $19 million from Appellee American Rice, Inc. ("American Rice"), which it claims to be due based upon agreements made over the course of several years, both before and after American Rice filed for Chapter 11 bankruptcy.  (D.E. 2-5 at 44-49; 56-57; D.E. 2-41 at 1.)  These agreements fall into three categories: (1) Pre-petition agreements (prior to the August 11, 1998 bankruptcy petition date), (2) Post-petition agreements (between August 11, 1998 and the July 7, 1999 confirmation date), and (3) Post-Confirmation agreements (after the July 7, 1999 confirmation date).  The Court briefly summarizes each of the agreements.

    1.    **Pre-Petition Agreements**

On April 4, 1988, Barrington Capital Corporation (predecessor in interest to Sandburg) and various American Rice related entities entered into a Guaranty, General Release and Consent Agreement, which provided:

> ERLY Industries, Inc., Comet Rice, Inc., Comet Rice, Houston, Comet Rice of California, Comet Rice of Puerto Rico, Inc., Comet Delta, Comet American Marketing, Early California Industries, Inc., Chemonics Industries, Inc., Chemonics International Consulting, Gerald D. Murphy, affiliates, related entities and any and all successors **guarantee, have guaranteed and will guarantee, jointly and severally, to pay any judgment that Michael D. Coal and/or Barrington Capital Corporation [now Sandburg Financial Corporation] obtained or will obtain at any time . . . .** (D.E. 2-5 at 51.) (emphasis added)

This agreement was purportedly executed by Gerald Murphy (former American Rice Chairman) on behalf of the signatories, but American Rice itself was not included as a party. (D.E. 2-5 at 51, 54.) Ten years after entering into the agreement, Sandburg obtained a judgment against ERLY Industries, Inc. and Does 1 to 100 (entities related to American Rice), entered in California Superior Court on April 24, 1998 (Sandburg Financial Corp. et al v. ERLY Industries, et al.) (the "Judgment"). (D.E. 2-5 at 56-57; D.E. 2-30 at 49-50.) Due to the April 4, 1988 Agreement, Gerald Murphy was personally liable for the Judgment, and in April 2009 Michael Coal of Sandburg obtained a judgment of approximately $19 million against Murphy based upon his person guarantee of payment.

After the April 1998 Judgment, ERLY Industries, Inc., Comet Rice, Inc., Comet Rice, Houston, Comet Rice Inc. (Texas), Comet Rice of California, Comet Rice of Puerto Rico, Inc., Comet Delta, Comet American Marketing, Early California Industries, Inc., Early California Foods, and American Rice, with their subsidiaries, divisions, and affiliates (collectively referred to as "Comet Rice") entered into a June 12, 1998 agreement with Sandburg to "reaffirm its obligation to pay any judgment Sandburg obtains and legal fees and costs Sandburg incurs." (D.E. 2-5 at 61; D.E. 2-30 at 54-56.) Comet Rice agreed to deliver $1,000,000 to Sandburg in exchange for Sandburg's

agreement to forbear on execution of the Judgment until June 2008.[1]  The June 12, 1998

Agreement was purportedly executed by Gerald Murphy on behalf of all signatories,

including American Rice.   (D.E. 2-5 at 61-62.)   Comet Rice made the necessary

payments to Sandburg under the agreement.

Thereafter, on June 15, 1998, Comet Rice Inc., American Rice, Inc., Comet Rice,

Houston, Comet Rice Inc. (Texas), Comet Rice of California, Comet American

Marketing, Comet Delta, Early California Industries Inc., Early California Foods, ERLY

Industries, Inc., Comet Rice of Puerto Rico, Inc., Comet Ventures, Inc., Rice Corporation

of Haiti, S.A. (collectively "Comet Rice") and subsidiaries entered into a Settlement

Agreement with Sandburg, which provided:

> In the event that Comet Rice files petition for relief under Chapter 11 of
> the Bankruptcy Code . . . the reorganized Comet Rice . . . **assume or shall
> assume all liabilities under: (a) this Agreement, (b) the Judgment, (c)
> the Guaranty Agreements, (d) any judgment Sandburg obtains, and
> (e) all executory contracts with Sandburg.**  The Reorganized Comet
> Rice **reaffirms or shall reaffirm its obligation to pay damages** that
> Sandburg incurs or will incur and any judgment Sandburg obtains or will
> obtain.
>
> * * *
>
> In the event that Comet Rice files petition for relief under Chapter 11 of
> the Bankruptcy Code and Sandburg's claim and Judgment are discharged
> or released in any fashion; the Reorganized Comet Rice and successors
> represent, warrant and agree that the Reorganized Comet Rice and
> successors are not released from the liabilities under the Agreement, the
> Judgment, the Guaranty Agreements and any judgment Sandburg obtains.
> (D.E. 2-5 at 67-68.)

---

[1] The agreement provided in relevant part: "Sandburg covenants: (a) not to execute upon the Judgment or enforce the Judgment prior to June 30, 2008, (b) not to execute on any judgment, (c) not to enforce any judgment, (d) not to do any post-judgment discovery, (e) not to make any collection effort, (f) to stay all actions, and (g) not to sue or assert any claims against Comet Rice prior to June 30, 2008 . . . ."  (D.E. 2-30 at 54-55.)  The term "Judgment" was defined as follows: "On April 24, 1998, the judgment was entered in favor of Sandburg against ERLY Industries, Inc. in the action entitled Sandburg Financial Corporation, et al. v. ERLY Industries, et al."  (D.E. 2-30 at 54.)

The June 15, 1998 Agreement was purportedly executed by Gerald Murphy on behalf of all signatories, and American Rice was listed as one of the parties to this Agreement. Gerald Murphy resigned as American Rice chairman on June 19, 1998.

### 2.     Post-Petition Agreements

American Rice commenced its Chapter 11 bankruptcy on August 11, 1998 (the "Petition Date") in the U.S. Bankruptcy Court for the Southern District of Texas.

On August 19, 1998, American Rice purportedly executed an offer wherein it sought to assume Rice Corporation of Haiti's obligation to Sandburg based on Rice Haiti's alleged agreement to satisfy the Judgment.  In exchange, Sandburg promised to forbear on collection for ten years.   (D.E. 2-41 at 7.)  Thereafter, on August 25, 1998, American Rice and related entities entered into another agreement with Sandburg wherein it unconditionally and forever assumed all of Rice Corporation of Haiti's liability and obligation to pay after June 30, 2008 any damages that Sandburg incurs and any judgment Sandburg obtains.  In exchange, Sandburg promised to forbear on collection of the Judgment until after June 30, 2008. (D.E. 2-30 at 69-72.)

On August 31, 1998, Rice Corporation of Haiti, SA, American Rice, Inc., and Comet Rice Inc. entered into an Indemnity Agreement with Sandburg, purportedly signed by Gerald Murphy.  (D.E. 2-9; D.E. 2-30 at 75.)  This agreement reaffirmed the earlier promise to pay on the Judgment.  The agreement stated that it "shall survive the filing for relief under Chapter 11 of the Bankruptcy Code by American Rice, Inc.," and stated that it was enforceable and binding upon American Rice, Inc. (D.E. 2-9 at 6.)  In exchange, Sandburg agreed not to execute upon or enforce any judgment, not to enforce any guaranty agreements, and not to sue or assert any claims against Rice Corporation of

Haiti, the reorganized American Rice, Inc., the reorganized Comet Rice, Inc., and other affiliates prior to June 30, 2008.  The post-petition agreements were not disclosed to the bankruptcy court.  (D.E. 2-41 at 9.)

Sandburg did not file a proof of claim in American Rice's bankruptcy case, but did do so based on the Judgment in the American Rice-related ERLY Industries' bankruptcy case.  Those claims were ultimately disallowed.  (D.E. 2-41 at 9.)

On July 7, 1999, the Bankruptcy Court confirmed American Rice's Chapter 11 Plan, and provided that the debtor was discharged of certain debts, including those for which no proof of claim was filed, and protected by an injunction against collection of pre-petition claims.  The reorganization plan also provided that confirmation would discharge the debtor of all claims that arose before the confirmation date, and set a sixty day period for the filing of administrative claims.  Sandburg did not file an administrative expense claim based on any of the Post-Petition agreements by the deadline.  (D.E. 2-41 at 9-10; D.E. 2-54 at 10-11.)

### 3.      Post-Confirmation Agreements and Complaint

American Rice and related entities entered into an agreement with Sandburg on August 9, 1999, after confirmation of the bankruptcy plan.  Under this agreement, American Rice stated that it was a "new agreement to pay any new claims Sandburg may have against American Rice."  In exchange, Sandburg agreed not to sue or assert any new claims against American Rice and related entities prior to June 30, 2008, nor to do any discovery prior to that time.    (D.E. 2-33 at 10; D.E. 2-34 at 1.)

Finally, on November 22, 1999, American Rice and related entities entered into an Indemnity and Release Agreement with Sandburg.  This agreement similarly provided

6 / 18

that American Rice and related entities agreed and guaranteed to pay after June 30, 2008, any damages Sandburg incurs and any judgment Sandburg obtains.  American Rice also "reaffirmed" its guaranty to pay after June 30, 2008 all of the obligations of any of its related entities to Sandburg.  In exchange, Sandburg again agreed not to execute upon or enforce any judgment, not to enforce any guaranty agreements, and not to sue or assert any claims against American Rice prior to June 30, 2008.  (D.E. 2-34 at 4-6.)

### B.      State Court Lawsuit

The agreed-upon tolling period for the enforcement of the Judgment ended on June 30, 2008.  Thereafter, on October 23, 2009, Sandburg filed suit in the 281st Judicial District Court of Harris County against American Rice (the "Post Confirmation Complaint"), seeking to collect amounts allegedly due from American Rice, Rice Corporation of Haiti, Comet Rice of Puerto Rico, Inc., and Comet Ventures, Inc. under the Pre-Petition Agreements only, including amounts due under the Judgment.  (D.E. 2-5 at 44-49; see also D.E. 2-5 at 76.)

### C.      Reopening of Chapter 11 Case and Bankruptcy Court Procedures

After Sandburg filed the Post Confirmation Complaint, American Rice on November 24, 2009, filed a motion to reopen the Chapter 11 case (D.E. 2-55) and filed a "Motion for Order that Sandburg Financial Corporation Appear and Show Cause as to Why Sandburg Should Not be Found in Contempt and Sanctioned for Violations of the Discharge Injunction."  (D.E. 2-5 at 1; see also D.E. 2-6 (notice of removal to Bankruptcy Court).)  The Bankruptcy Court granted the motions on November 24, 2009.  (D.E. 2-7; 2-56.)  Appellee later moved for summary judgment on the motion (on January 27, 2010)

(D.E. 2-18), arguing that the Post Confirmation Complaint violated the Bankruptcy Court's discharge injunction and confirmation order.

The bankruptcy court heard the motion on March 8, 2010 (D.E. 2-39), and issued an opinion on April 27, 2010, finding that Appellant's Post Confirmation Complaint violated the discharge injunction and confirmation order. (D.E. 2-41.)  Specifically, the Bankruptcy Court found: (a) Sandburg's claim based on the Pre-Petition Agreements and Post-Petition Agreements was discharged by the Court's Confirmation Order and Reorganization Plan, (b) the Post-Petition Agreements and Post-Confirmation Agreements are unenforceable, and (c) the Post-Confirmation Complaint violates the Court's discharge injunction.  (D.E. 2-41 at 1-2; 18-20; 20-29.)

On June 21, 2010, the Bankruptcy Court held a hearing on the Motion for Contempt (D.E. 2-48) and thereafter (on July 23, 2010) found Sandburg in contempt of the discharge injunction and awarded American Rice attorney's fees as sanctions.  (D.E. 2-52 at 18.)   The bankruptcy court entered final judgment on August 10, 2010, finding that Appellant's claims were discharged during the bankruptcy, and that Appellant was forever barred from pursuing the claims against Appellee.  The claims were dismissed with prejudice and $500,000 in attorney's fees were awarded as sanctions.  (D.E. 2-53; D.E. 2-63.)

### D.     Procedures on Appeal

On August 24, 2010, Appellant Sandburg filed a notice of appeal of the Bankruptcy Court judgment. (D.E. 1.)   Appellant filed its brief on October 12, 2010 (D.E. 3), Appellee responded on October 29, 2010 (D.E. 4), and the Court heard oral arguments on February 11, 2011.

IV.     **Issues on Appeal**

Appellant argues that the two Post-Confirmation Agreements were not discharged by the Confirmation Order and are valid and enforceable because they represent new contracts supported by new and independent consideration.  Appellant does not appeal any findings with respect to the Pre- or Post-Petition agreements.[2]  Appellant states that it merely sought to enforce post-confirmation debts, and did not act in bad faith or willfully violate the confirmation order.  Thus, sanctions were inappropriate.

Appellant states two issues on appeal:

1) Whether the Bankruptcy Court erred in finding the Post-Confirmation Agreements void and unenforceable, because the agreements are new contracts supported by new and independent consideration.

2) Whether the Bankruptcy Court erred in finding appellant in contempt because appellant did not willfully or knowingly violate the confirmation order.

V.      **Discussion**

A.      **Issue 1:  Whether the Bankruptcy Court erred in finding the Post-Confirmation agreements void and unenforceable, because the agreements are new contracts supported by new and independent consideration.**

The Bankruptcy Code, 11 U.S.C. § 524(c), governs the enforcement of agreements between a creditor and a debtor involving dischargeable debts (a so-called

---

[2] The Bankruptcy Court concluded that any pre-confirmation agreements (both pre- and post-petition) were discharged by the Confirmation Order, and thus unenforceable.  (See D.E. 2-41 at 16-20.)  Appellant's lawyer acknowledged during the summary judgment hearing in the Bankruptcy Court that Sandburg could not pursue claims based upon the Pre-Petition and Post-Petition Agreements.  (D.E. 2-39 at 21-22.)  Appellant's brief also acknowledges that only the Post-Confirmation Agreements are at issue, stating: "[t]he post-confirmation agreements were not discharged by the confirmation order and are valid and enforceable because they represent new contracts supported by new and independent consideration."  (D.E. 3 at 7.)

"reaffirmation agreement").[3]   Section 524(c) provided at the time of the agreements

(1999):

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title **is enforceable only** to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, **only if--**
>
>> (1) such agreement was made **before the granting of the discharge** under section 727, 1141, 1228, or 1328 of this title;
>>
>> (2) (A) such agreement **contains a clear and conspicuous statement** which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and
>>
>> (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under non-bankruptcy law, or under any agreement not in accordance with the provisions of this subsection.
>>
>> . . .
>>
>> (3) such agreement has been **filed with the court** and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--
>>
>>> (A) such agreement represents a fully informed and voluntary agreement by the debtor;
>>>
>>> (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
>>>
>>> (C) the attorney fully advised the debtor of the legal effect and consequences of--
>>>
>>>> (i) an agreement of the kind specified in this subsection; and

---

[3] The Bankruptcy Court concluded that the debt at issue here (American Rice's guarantee of payment of the Judgment under the Pre- and Post-Petition Agreements) was dischargeable and in fact discharged. (D.E. 2-41 at 21-22.)

(ii) any default under such an agreement;

11 U.S.C. § 524(c) (1999) (emphasis added). "The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. Because of the danger that creditors may coerce debtors into undesirable reaffirmation agreements, they are not favored under the Bankruptcy Code and **strict compliance with the specific terms in Section 524 is mandatory**. A reaffirmation agreement which does not comply fully with Section 524 is void and unenforceable." In re Getzoff, 180 B.R. 572, 574 (9th Cir. BAP 1995) (citations omitted); In re Kinion, 207 F.3d 751, 756 (5th Cir. 2000) (reaffirmation agreement "flawed" under 11 U.S.C. § 524(c) is "unenforceable").

Here, Appellant argues that the Bankruptcy Court erred in finding the Post-Confirmation Agreements to be unenforceable. As an initial matter, the Bankruptcy Court did not err in finding that the Post-Confirmation Agreements failed to comply with the requirements of 11 U.S.C. § 524(c). Specifically, the agreements were not (1) "made before the granting of discharge," (2) they do not contain the disclosures required by Section 524(c), and (3) the agreement was not "filed with the court." This precludes enforcement under Section 524(c). See In re Kinion, 207 F.3d at 756 (5th Cir. 2000).

Attempting to fashion an exception to Section 524(c), Appellant labels the agreements as "new contracts, supported by new and independent consideration," rather than "reaffirmation agreements." (D.E. 3 at 7.) Thus, the Post-Confirmation Agreements are valid, if at all, only if the law allows for new agreements between a debtor and creditor, the "consideration for which would be the forbearance of appellant from enforcement of its judgment against appellee's affiliated entities." (D.E. 3 at 8.)

Appellant points to a few decisions to have found an exception to Section 524(c) for post-confirmation agreements supported by new and independent consideration, and thus considered such agreements to be enforceable.  (D.E. 3 at 8-10 (citing In re Watson, 192 B.R. 739 (9th Cir. BAP 1996); In re Peterson, 110 B.R. 946 (Bankr. D. Colo. 1990); In re Button, 18 B.R. 171 (Bankr. W.D.N.Y. 1982); In re Heirholzer, 170 B.R. 938 (Bank. N.D. Oh. 1994); In re Antonino, 241 B.R. 883 (Bankr. N.D. Ill. 1999).)  The cases upon which Appellant relies, however, have been seriously questioned since their issuance.  See, e.g., In re Stevens, 217 B.R. 757, 761 (Bankr. D. Md. 1998) ("[T]he Heirholzer court take[s] the opposite approach to § 524(c) than that which is intended by Congress); In re Zarro, 268 B.R. 715, 722 (Bankr. S.D.N.Y. 2001) ("To the extent [creditor's] authorities suggest that a post-petition agreement to pay a discharged debt is valid simply because the creditor offers something extra, I join the growing chorus that questions their correctness."); Matter of Arnold, 206 B.R. 560, 566 (Bankr. N.D. Ala. 1997) ("The Court believes [In re Heirholzer] and [In re Button] are wrong.").

Many courts have in fact considered and rejected the "new and independent consideration" exception.  One court has stated, "[i]f the consideration for the [contract] is based, *in whole or in part*, on a dischargeable debt, then the agreement must comply with § 524.  Therefore, even if it could be argued that the [contract] was based upon *new* consideration, this Court finds that the [contract] was at least based in part upon the discharged debt and therefore must comply with § 524 to be valid."  In re Cruz, 254 B.R. 801, 815 (Bankr. S.D.N.Y. 2000); see also In re Ewing, 365 B.R. 347, 350 (Bankr. D. Mass. 2007 ("[T]he forbearance agreement . . . was a form of 'reaffirmation agreement.' Such agreements, though they arise postpetition, are **not enforceable unless statutorily-**

**prescribed procedures are followed with respect to those agreements**.") (emphasis added).   Another court has explained: "Section 524(c) is not concerned with the consideration that the debtor received; instead, **it invalidates non-complying agreements where any part of the consideration given by the debtor involves his promise to pay a discharged debt**. Every reaffirmation agreement involves some element of new consideration. Otherwise, the debtor would not agree to pay the discharged debt. If new consideration saved a non-complying reaffirmation agreement, little would remain of the protection afforded by § 524(c)." In re Zarro, 268 B.R. 715, 720-21 (Bankr. S.D.N.Y. 2001) (citations omitted).   The Court finds this reasoning persuasive.

Appellant cites no authority in the Fifth Circuit to support a new and independent consideration exception, nor have any been discovered independently.   The one Texas court to have discussed the exception and considered the cases upon which Appellant relies in fact declined to follow those cases.   In re Artzt, 145 B.R. 866 (Bankr. E.D. Tex. 1992).   That court reasoned, "[a]s enacted, § 524(c) is purposefully rigorous in application.   This Court agrees . . . that supporting [creditor's] position would be counter to the policy goals of § 524(c), in protecting debtors from creditors and in many instances from their own improvident actions."   In re Artzt, 145 B.R. at 870.   Given the lack of authority in the Fifth Circuit permitting enforcement of the Post-Confirmation Agreements at issue here under a "new and independent consideration" exception, and the significant authority to the contrary, the Court concludes that the Post-Confirmation Agreements would be enforceable only upon compliance with Section 524(c).

13 / 18

In light of this case law, the Bankruptcy Court rightly demanded that the Post-Confirmation Agreements comply with Section 524(c).  The Bankruptcy Court properly noted that the Post-Confirmation Agreements purported to reaffirm American Rice's pre-confirmation debt to Sandberg; a debt which was discharged.  Because the consideration for this agreement was "'in whole or in part' based on a 'debt that is dischargeable,'" it is "only enforceable if the requirements of the Bankruptcy Code were satisfied."  (D.E. 2-41 at 21-22.)  The Bankruptcy Court correctly found that the post-confirmation agreements did not satisfy the requirements of Section 524(c). (D.E. 2-41 at 22.)

Notwithstanding the lack of authority to support a "new and independent consideration" exception to Section 524(c), the Bankruptcy Court also considered whether the Post-Confirmation Agreements could be enforceable in light of such an exception, were it viable.  (D.E. 2-41 at 26-27.)  As the Bankruptcy Court readily recognized, Sandburg's consideration in the Post-Confirmation Agreements included the same promise to forbear on enforcement of the Judgment as contained in the previous agreements.  (D.E. 2-41 at 26-27 & n.4.)  Appellant contends that its new consideration was its agreement to forbear on executing the Judgment against American Rice's subsidiary, Rice Haiti, since it was unclear whether Rice Haiti was an intended beneficiary of the earlier June 12, 1998 Agreement.  (D.E. 3 at 10-12; D.E. 2-41 at 27-29.)  During oral argument, counsel for Appellant further argued that "new consideration" supported the Post-Confirmation Agreements because all pre-confirmation agreements had been declared void and unenforceable in bankruptcy.

Although the Court has rejected the "new and independent consideration" exception to Section 524(c) and need not reach this issue, it finds that the Bankruptcy

Court did not err in rejecting this argument, or in concluding that the Agreements were not supported by new and independent consideration. (D.E. 2-41 at 26-29.)   Appellant's argument relying upon the unenforceability of the pre-confirmation agreements must also be rejected, as it would essentially allow any post-confirmation agreement to be enforceable under the proposed "new and independent" consideration exception, whenever pre-discharge agreements were declared unenforceable.   These agreements would essentially be written on a "clean slate," and would always be supported by new and independent consideration.   In effect, this would greatly expand the scope of a new consideration exception, and greatly diminish the import of 11 U.S.C. § 524(c), which governs such reaffirmation agreements.   The Bankruptcy Court properly rejected Appellant's arguments.

In sum, the Court finds that the Bankruptcy Court did not err in finding the Post-Confirmation Agreements void and unenforceable.

**B.     Issue 2: Whether the Bankruptcy Court erred in finding Appellant in Contempt because Appellant did not Willfully or Knowingly Violate the Confirmation Order**

"[A] bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code." Matter of Terrebonne Fuel and Lube, Inc., 108 F.3d 609, 613 (5th Cir. 1997); 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). A civil contempt order "which compensates a debtor for damages suffered as a result of a creditor's violation of [the discharge injunction is] both necessary and appropriate to carry out the provisions of the bankruptcy code." Terrebonne Fuel and Lube, 108 F.3d at 613.

A "bankruptcy court's decision to impose sanctions is discretionary, therefore we review the exercise of this power for abuse of discretion." Id. at 613. With respect to contempt for violation of a discharge injunction, one court has explained:

> "Section 524 of the [Bankruptcy] Code provides that an order discharging a debt in a bankruptcy case 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor....' Even though section 524(a)(2) is a statutory provision, as it grants relief triggered by the discharge order, the injunction has been equated to an order of the court. The discharge injunction is broad and prohibits any act taken to collect a discharged debt as a personal liability of the debtor. Thus, the discharge injunction is a definite and specific court order that requires creditors to refrain from particular acts, i.e., any act to collect, recover, or offset any discharged debt as a personal liability of the debtor. **If any party knowingly violates the discharge injunction, the court may properly hold that party in civil contempt**."

In re McClure, 420 B.R. 655, 659 (Bankr. N.D. Tex. 2009) (citing 11 U.S.C. § 524(a)(2)) (emphasis added).

"[C]ompensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction." In re Eastman, 419 B.R. 711, 725 (Bankr. W.D. Tex. 2009) (citing Torres v. Chase Bank USA, N.A. ( In re Torres ), 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007)). "In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees." 420 B.R. at 663. "Actions that violate the discharge injunction are willful **if the creditor that violates the discharge injunction [1] knows the injunction has been entered and [2] intends the actions that violate it. That the actions are intentional - as opposed to the actual violation of the injunction being intentional - is sufficient**." 420 B.R. at 663 (emphasis added). "In order to support a finding of contempt under 11 U.S.C. § 524(a)(2), there must be

16 / 18

showing that the order of discharge alleged to have been violated is specific and definite and that the offending party has knowledge of the Court's order." In re Contreras, 2007 WL 273128, at *1 (Bankr. S.D. Tex. Jan. 26, 2007).

Upon reviewing the evidence, arguments, and applicable law, the Court concludes that the Bankruptcy Court did not abuse its discretion in awarding sanctions in the amount of $500,000 for Appellee American Rice. Here, there is little dispute that Sandburg knew that the discharge injunction was in place and invoked at the time it sought to enforce the post confirmation agreements through the Post Confirmation Complaint. (See D.E. 2-52 at 6-7; 8-9.) There is also little dispute that the confirmation order "was specific and definite." (See D.E. 2-52 at 7.)[4] Finally, Sandburg's actions were willful, as it knew the injunction had been entered and intended to take the actions at issue, as evidenced by the Post Confirmation Complaint. (D.E. 2-52 at 10-13.) That Sandburg may have not understood its actions to violate the discharge injunction, or disagreed with the Bankruptcy Court's legal outcome on this issue does not negate the willfulness finding, even if true. In re McClure, 420 B.R. at 663 ("That the actions are intentional - as opposed to the actual violation of the injunction being intentional - is sufficient."). The Bankruptcy Court's finding of contempt in no way constitutes an abuse of discretion, and the Court thus affirms the contempt finding. (D.E. 2-52.)

---

[4] The Confirmation Order provided in part: "[T]he Debtor is discharged of all debts that are dischargeable pursuant to 11 U.S.C. § 1141 and pursuant to the terms of the Plan," and "all Creditors . . . are hereby enjoined from the commencement or continuation of any action, the employment of process, or any act to collect or recover any debts and/or claims against the Debtor and/or the estate." (D.E. 2-54 at 10-11.)

## VI. Conclusion

For the reasons stated above, the Court AFFIRMS the Bankruptcy Court judgment. (D.E. 2-53; D.E. 2-63.)

SIGNED and ORDERED this 11th day of February, 2011.

Janis Graham Jack
United States District Judge